2006 OK CR 37

**Michael Allen BROWNING, Appellant**

v.

**STATE of Oklahoma, Appellee.**

No. PCD–2003–669.

Court of Criminal Appeals of Oklahoma.

Sept. 14, 2006.

Robert J. Stubblefield Tulsa, OK, attorney for defendant at Trial.

Doug E. Drummond, Steve Kunzweiler, Assistant District Attorneys, Tulsa, OK, attorneys for the State at Trial.

James L. Hankins, Hankins Law Office, Oklahoma City, OK, Attorney for Petitioner on Application for Post–Conviction.

W.A. Drew Edmondson, Attorney General of Oklahoma, Preston Saul Draper, Assistant Attorney General, Oklahoma City, OK, Attorneys for Appellee on Application for Post–Conviction.

## OPINION DENYING POST–CONVICTION RELIEF AND DENYING REQUEST FOR EVIDENTIARY HEARING

OPINION BY: CHAPEL, P.J.

¶1 Michael Allen Browning was tried by jury and convicted of two counts of Murder in the First Degree, shooting with intent to kill, robbery with firearms, and arson in the District Court of Tulsa County, Case No. CF–01–1098. In accordance with the jury's recommendation the Honorable Rebecca Brett Nightingale sentenced Browning to two sentences of death and terms of imprisonment, with a $25,000 fine. In the capital counts, the jury found the murders posed a great risk of death to another person and were especially, heinous, atrocious and cruel. This Court affirmed Browning's convictions and sentences.[1] The United States Supreme Court has not yet ruled on Browning's petition for certiorari.

¶2 On April 29, 2005, Browning filed an application for capital post-conviction relief.[2] The only issues appropriately raised under Oklahoma's post-conviction statutes are those which: "(1) [w]ere not or could not have been raised in a direct appeal; and (2)[s]upport a conclusion either that the outcome of the trial would have been different but for the errors or that the defendant is factually innocent."[3] On review, this Court must determine: "(1) whether controverted, previously unresolved factual issues material to the legality of the applicant's confinement exist, (2) whether the applicant's grounds were or could have been previously raised, and (3) whether relief may be granted...."[4] We will not treat the post-conviction process as a second appeal, and will apply the doctrines of res judicata and waiver where a claim either was, or could have been, raised in the petitioner's direct appeal.[5] Browning raises four propositions of error in support of his application.

¶3 Browning's first proposition does not present a claim of error under the post-conviction statutes. Browning claims he has a due process right to interview his co-defendant, Pethel, and asks this Court to determine whether state ethical rules governing attorney behavior conflict with his claim, to enter an order "clarifying the relationship" between Pethel and his attorney, and to either (a) allow Browning's post-conviction counsel to contact Pethel without complying with professional rules of conduct, or (b) remand the case to the District Court for an evidentiary hearing on the issue of the status of Pethel's representation by counsel. [Application at 17] This is a request for discov-

---

1. *Browning v. State*, 2006 OK CR 8, 134 P.3d 816.

2. At this Court's direction, the State filed its Response to Browning's Application on July 3, 2006. Browning filed a Reply to the State's Response on August 16, 2006.

3. 22 O.S.Supp.2004, § 1089(C).

4. 22 O.S.Supp.2004, § 1089(D)(4)(a).

5. *Davis v. State*, 2005 OK CR 21, 123 P.3d 243, 244; *Hooks v. State*, 2001 OK CR 7, 22 P.3d 231, 232.

ery. Post-conviction applicants may request discovery where trial discovery orders were not complied with, and the material sought would have resulted in a different outcome at trial.[6] Browning claims he must explore the unlikely possibility that, despite Pethel's consistent statements that Browning instigated the crimes, shot the victims, and set the fire, Pethel might give counsel information helpful to Browning's appeal. This request amounts to speculation as to what Pethel would say, if he were interviewed. Separately, Browning asks for an evidentiary hearing on this issue, as well as other evidentiary issues. Browning fails to show "by clear and convincing evidence the materials sought to be introduced have or are likely to have support in law and fact to be relevant to an allegation raised in the application for post-conviction relief." [7] Browning's application supports neither an order for discovery nor an order for an evidentiary hearing, and his requests are denied.[8]

■■■ ¶4 Neither Proposition II(A) nor Proposition III are properly raised under the post-conviction statute.

The applicant shall state in the application specific facts explaining as to each claim why it was not or could not have been raised in a direct appeal and how it supports a conclusion that the outcome of the trial would have been different but for the errors or that the defendant is factually innocent.[9]

Browning completely fails to state why each claim could not have been raised in a direct appeal. Proposition II(A), that Browning's level of participation in the crimes does not rise to the level of culpability sufficient to support the death penalty, could have been raised on direct appeal and has been waived.

Browning admits in Proposition III, claiming errors in jury selection, that some voir dire issues were raised on direct appeal, but argues that other voir dire issues should have been raised as well. We will not allow a defendant to subdivide claims in order to relitigate an issue in an application for post-conviction.[10] By Browning's own admission, these issues which were not raised have been waived. Propositions II(A) and III are denied.

■ ¶5 In Proposition II(B) Browning claims that this Court's mandatory sentence review was flawed because, essentially, Pethel's culpability in the murders and his subsequent conduct while incarcerated renders Browning's sentence "arbitrary and freakish." [Application at 30] This claim is not proper under the post-conviction statutes. The Court's mandatory sentence review is required by law, as a safeguard, to determine whether the sentences of death were imposed under the influence of passion, prejudice or any other arbitrary factor, and whether the evidence supports the jury's finding of a statutory aggravating circumstance.[11] While the Court may, in conducting its mandatory sentence review, reach conclusions about the appropriateness of the jury's decision to impose the death sentence, that review is strictly an appellate function. Our review, in itself, will not support a claim of factual innocence or that *the outcome of the trial* would have been different but for errors claimed in a post-conviction application.[12] We will not consider this claim.

¶6 Within the first three propositions, Browning notes in a paragraph concluding each proposition that, as far as this Court may consider those claims waived or barred, trial and appellate counsel were ineffective

---

**6.** 22 O.S.Supp.2004, § 1089(D)(3); Rule 9.7(D)(3), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2006). This Court may remand for an evidentiary hearing on the issue of discovery if failure to comply with a discovery order is the grounds for an issue raised in the application. Rule 9.7(D)(4), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2006).

**7.** Rule 9.7(D)(5), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch.18, App. (2006).

**8.** *Davis*, 123 P.3d at 249. *See also Bland v. State*, 1999 OK CR 45, 991 P.2d 1039, 1041 (petitioner not entitled to depose witnesses when discovery claim is speculative).

**9.** 22 O.S.Supp.2004, § 1089(C).

**10.** *Davis*, 123 P.3d at 248.

**11.** 21 O.S.2001, § 701.13(C).

**12.** 22 O.S.Supp.2004, § 1089(C).

for failing to raise them. We need not reach this claim as to Proposition I, which is a request for discovery rather than a claim of error. We review claims of ineffective assistance of counsel *de novo*, to see whether counsel's constitutionally deficient performance, if any, prejudiced the defense so as to deprive Browning of a fair trial with reliable results.[13] Browning fails to show in any of these propositions that he was prejudiced by trial and appellate counsels' failures.

¶ 7 In Proposition II, Browning claims he was not eligible for the death penalty given his low level of participation in the crimes. Browning planned the crimes, recruited Pethel, bound the victims, robbed the house, carried the victims to a closet, set the closet on fire, and told Pethel to shoot the victims.[14] This substantial level of participation rises to the moral culpability necessary to be eligible for a death sentence.[15] Browning cannot show he was prejudiced by previous counsels' failure to raise this claim.

¶ 8 In Proposition III Browning claims errors in jury selection deprived him of an impartial jury. This Court rejected this claim in Browning's direct appeal.[16] Browning argues previous counsel should have objected to other jurors. Browning has not shown he was prejudiced by the presence of any particular juror on his jury; nor has he shown that the trial court abused its discretion in excusing jurors for cause.[17] He completely fails to show in this application, as he failed to show in his arguments on direct appeal, that he was forced to keep any juror unacceptable to him.[18] Browning has not shown he was prejudiced by previous counsels' failure to raise this claim. As he has not shown he was prejudiced by trial and appellate counsels' conduct as raised in these propositions, we will not find counsel were ineffective.

¶ 9 In Proposition IV Browning claims that the accumulation of error at trial and on direct appeal warrant post-conviction relief. Browning cites no authority under which, on post-conviction, this Court may consider an accumulation of trial errors which were not raised as error in the post-conviction claim. Insofar as Browning intends this claim to apply to the errors raised in this post-conviction application, we have determined that those claims were barred, waived, or not proper claims under the post-conviction statute. They therefore do not require relief in accumulation.[19]

### Decision

¶ 10 The Application for Capital Post–Conviction Relief and Motion for Evidentiary Hearing are **DENIED**. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2006), the **MANDATE** is **ORDERED** issued upon the delivery and filing of this decision.

C. JOHNSON, A. JOHNSON, and LEWIS, JJ.: concur.

LUMPKIN, V.P.J.: concur in results.

LUMPKIN, VICE–PRESIDING JUDGE: CONCUR IN RESULTS.

¶ 1 I concur in the results reached and agree the Application for Post–Conviction Relief should be denied. However, as I have noted before, I cannot agree with the cavalier way this Court tosses around the concept of *"de novo* review" as a shield to unbridled appellate decision-making.

**13.** *Davis,* 123 P.3d at 246; *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

**14.** *Browning,* 2006 OK CR 8, 134 P.3d 816, 825.

**15.** *Tison v. Arizona,* 481 U.S. 137, 158, 107 S.Ct. 1676, 1688, 95 L.Ed.2d 127 (1987); *Enmund v. Florida,* 458 U.S. 782, 801, 102 S.Ct. 3368, 3378, 73 L.Ed.2d 1140 (1982).

**16.** *Browning,* 2006 OK CR 8, 134 P.3d at 827–830.

**17.** *Hanson v. State,* 2003 OK CR 12, 72 P.3d 40, 48; *Warner v. State,* 2001 OK CR 11, 29 P.3d 569, 573–74.

**18.** *Browning,* 2006 OK CR 8, 134 P.3d at 828; *Warner,* 29 P.3d at 573–74.

**19.** *Al–Mosawi v. State,* 1998 OK CR 18, 956 P.2d 906, 910.

¶ 2 Pursuant to 22 O.S.Supp.2004, § 1089(D)(4), this Court's authority on review of post-conviction applications is limited. Ineffective assistance of counsel claims are broken down into two categories: (1) ineffective assistance of trial counsel "involving a factual basis that was not ascertainable through the exercise of reasonable diligence on or before the time of direct appeal"; and (2) "a claim contained in an original timely application for post-conviction relief relating to ineffective assistance of appellate counsel". If this Court determines that previously unresolved factual issues do not exist or the claims were or could have been previously raised, then it is required under the statute to enter an order denying the claim and provide findings of fact and conclusions of law to that effect. If the Court determines there are unresolved issues of fact then the case must be remanded to the district court to resolve those factual questions.

¶ 3 One of the hardest traits for appellate courts to exercise is the self-discipline to function within the parameters of the law that limit our scope of authority. This Court should not and cannot adjudicate disputed facts "*de novo*", that is not within our historical scope of authority. While we must ensure the law is applied in a correct manner, we are constrained in our duty by the determination of the trier of facts as to any disputed facts in the case. For these reasons, I believe appellate courts must be vigilant in their application of the rules that ensure the objective and consistent enforcement of our laws, and reticent in merely trying to second guess a trier of fact.